### GRENADA COTTON COMPRESS CO. et al. v. OWEN.

(Circuit Court of Appeals, Fifth Circuit. January 18, 1921.)

No. 3526.

Indemnity ⬯9 (2)—Covering fees and costs in resisting claims, held to cover fees in defending against loss by fire.

An agreement by cotton compress company to protect a carrier against attorney's fees and costs incurred in defending against claims for cotton for which bills of lading were issued while still in the compress company's possession applies where the claim defended against was for loss of cotton destroyed by fire, though the preceding paragraph of the contract required compress company to pay for insurance taken out by the carrier against loss of such cotton by fire, since insurance taken out would not have covered the fees and costs.

Bryan, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of Mississippi; Edwin R. Holmes, Judge.

Suit by W. F. Owen, as receiver of the New Orleans, Mobile & Chicago Railroad Company, against the Grenada Cotton Compress Company and another. Decree for complainant, and defendants appeal. Affirmed.

Julian C. Wilson and Walter P. Armstrong, both of Memphis, Tenn. (W. H. & Robt. H. Powell, of Canton, Miss., on the brief), for appellants.

J. N. Flowers, of Jackson, Miss., and Ellis B. Cooper, of Laurel, Miss. (Jos. C. Rich, of Mobile, Ala., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The object of this suit, brought by the appellee as the receiver of the New Orleans, Mobile & Chicago Railroad Company, against the appellants, the Grenada Cotton Compress Company and the American Bonding Company of Baltimore, was to charge the latter with the amount of costs, lawyers' fees, and other expenses incurred by the former in successfully resisting a claim asserted against it by suit for the loss by fire of cotton, while in the possession of the Compress Company, after the Railroad Company's bills of lading therefor had been issued. The claim asserted by this suit is based upon a written contract entered into in November, 1911, between the Railroad Company and the Compress Company; the Bonding Company's relation to that contract being that of a guarantor of the covenants and agreements thereby made by the Compress Company. That contract dealt with transactions between the Railroad Company and the Compress Company with reference to cotton coming to the possession of the latter for warehousing or compression, and destined to be carried by the Railroad Company, including what was referred to in the contract as "billed cotton," which meant cotton delivered to the Compress Company, which was intended to be shipped over the line of the Railroad Company, and for which the Railroad Company's bills of lading, based upon certificates issued by the Compress Company, were issued before the receipt of the cotton by the Railroad Company. The claim successfully resisted by the Railroad Company was made in a suit by the owner of uninsured billed cotton, which was destroyed by fire while in the Compress Company's compress on February 4, 1912.

The above-mentioned contract contains the following provisions:

"The Compress Company agrees and binds itself * * *

"9. To pay to the Railroad Company the premiums, and any other expenses attending the same, within ten days after the account is rendered by the Railroad Company, on fire insurance policies covering all warehoused cotton in transit, loaded cotton and billed cotton, contained in the warehouse on the platforms or grounds, or under the sheds of the Compress, or in cars while on side tracks used for the Compress, said insurance to be taken out by the Railroad Company in such insurance companies as it may select, and for such amounts as the Railroad Company deems advisable to fully protect it against any and all loss. And all such policies of insurance shall be made payable to the Railroad Company and retained in its possession.

"10. To protect, defend and hold the Railroad Company harmless from any liability, damages, losses or claims that may arise from the loss or injury or delay of cotton in transit, warehoused cotton, loaded cotton or billed cotton, or any part thereof, from the time of the delivery to the Compress until the redelivery to the Railroad Company of cotton in transit and warehoused cotton, and from the time of the issue of bills of lading by the Railroad Company until the delivery to the Railroad Company of loaded cotton and billed cotton; and to pay all costs, lawyers' fees and expenses that the Railroad Company may have become liable for, or suffer in any suit or proceeding to recover on account of such loss or injury or delay."

In behalf of the appellee it is contended that the costs, lawyers' fees, and expenses for which the appellants are sought to be charged with liability were such as the terms of the above-quoted paragraph 10 obligated the appellants to protect, defend, and hold the appellee harmless from. In behalf of the appellants it is contended that the terms of that paragraph, when construed in connection with the terms of the immediately preceding paragraph 9, do not embrace costs, lawyers' fees, or expenses for which the Railroad Company becomes liable or suffers in consequence of the assertion of a claim against it for loss of cotton by fire. It is admitted that, standing by itself, the language of paragraph 10 is broad and comprehensive enough to cover claims arising from the loss of billed cotton by any cause whatsoever, including fire. The provisions of paragraph 9 are relied on as evidencing the absence of any intention to protect or indemnify the Railroad Company with reference to claims against it based on the loss of cotton by fire, while it is on the premises of the Compress Company, otherwise than as therein stipulated for.

If the billed cotton in question had been insured in pursuance of the stipulations on that subject the existence of such insurance would not have stood in the way of the owner of such cotton asserting a claim against the Railroad Company based upon its loss by fire. Article 9 provided for fire insurance in favor of the Railroad Company at the expense of the Compress Company. It did not provide for protection or indemnity to the Railroad Company against costs, lawyers' fees, or other expenses incurred by it in resisting a claim based on loss by fire made against it by an owner of cotton. If the cotton had been insured, and had been destroyed by fire under such circumstances as to make the Railroad Company liable to the owner and the insurer liable to the Railroad Company, the owner could have subjected the Railroad Company to costs, lawyers' fees, and expenses by suing it for the loss. Such suit could have been brought before the insurance money would have been payable by the terms of the policy or policies issued. Article 9 gives the Railroad Company no protection against outlays made or incurred by it, namely, for costs, etc., in consequence of claims arising from loss, etc., with reference to which article 10 evidences an intention to afford it indemnity. The language of the contract plainly discloses an intention to protect the Railroad Company from liability for a loss of billed cotton on the premises of the Compress Company, and also against expenses incurred by it in resisting claims against it arising from such loss. Nothing in the contract indicates that any mentioned expenses so incurred were excepted.

In so far as article 10 dealt with expenses incurred by the Railroad Company in consequence of the unsuccessful assertion of claims against it arising from the loss of cotton, it dealt with a subject which in no way was dealt with in article 9. The requirements of the last-mentioned article would have been fully complied with by the Compress Company paying for insurance taken out by the Railroad Company for such amounts as the latter deemed advisable to protect it against any and all loss by fire. The expressed intention to protect the appellee, not only against liability for loss of cotton on the premises

of the Compress Company, but also with reference to expenses incurred by it in consequence of claims against it arising from such loss, would be defeated by sustaining the contention made in behalf of the appellants. We are of opinion that a result of sustaining that contention would be to deprive the appellee of part of the indemnity for which it contracted.

It may be assumed that article 9 of the contract obligated the Railroad Company to take out insurance for such amounts as it deemed advisable to protect it against loss by fire. It was not averred or proved that the Compress Company was damaged as a result of the Railroad Company's failure to insure the cotton in question.

The rulings of the trial court were in conformity with the views above expressed. The decree is affirmed.

BRYAN, Circuit Judge. I dissent, because destruction of cotton by fire was not a "loss" of cotton within the meaning of the contract sued on, as I construe it.

Undoubtedly, loss is a term broad enough to include destruction by fire. The question is whether the parties have given a restricted meaning to the term by the provisions of the contract quoted in the majority opinion.

Insurance against loss of cotton by fire is the subject matter of paragraph 9, which authorizes the Railroad Company to procure fire insurance in such companies, and for such amounts as it might deem advisable "to fully protect it against any and all losses." The rights and obligations of the parties in the event of loss by fire, it seems to me, are fixed by this paragraph, and the losses, other than by fire, are covered by paragraph 10. Insurance against loss by fire is usually taken out in fire insurance companies.

I cannot escape the conclusions that paragraph 10 was intended to cover other than fire losses, and incidental expenses growing out of them, that the Railroad Company required fire insurance for losses by fire, and indemnity insurance for such other losses as might occur.